UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cr-20009-SLD-EIL-1 |
| | ) | |
| THOMAS JAMES, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

## ORDER

Before the Court are Defendant-Petitioner Thomas James's *pro se* Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se

2255 Motion"), ECF No. 108, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C.

§ 2255 ("Counseled 2255 Motion"), ECF No. 113, and counseled motion for a status conference,

ECF No. 126.  For the reasons that follow, the § 2255 motions are DENIED, and the motion for

a status conference is MOOT.

## BACKGROUND

In February 2017, James was charged in a four-count indictment with Hobbs Act robbery

in violation of 18 U.S.C. § 1951 based on a July 28, 2016 robbery of a Sprint store (count one);

Hobbs Act robbery based on an August 6, 2016 robbery of a Circle K gas station (count two);

brandishing a firearm during and in relation to a crime of violence—the Circle K robbery—in

violation of 18 U.S.C. § 924(c)(1)(A)(ii) (count three); and possession of a firearm by a felon in

violation of 18 U.S.C. § 922(g)(1) (count four).  *See generally* Indictment, ECF No. 1.  Assistant

Federal Public Defender Elisabeth Pollock was appointed to represent James.  Feb. 16, 2017

Min. Entry.  In June 2017, a superseding indictment was returned.  *See* Superseding Indictment,

ECF No. 12.  The charges against James remained the same but co-defendants were added to

1

count one.  *See id.* at 1–2.  James pleaded guilty to the charges against him without a plea

agreement.  *See* June 21, 2017 Min. Entry; R. & R. Concerning Plea of Guilty, ECF No. 21;

Order Approving Magistrate Judge Recommendation, ECF No. 34.

      A presentence investigation report ("PSR") was prepared in advance of sentencing.  *See*

PSR, ECF No. 52.  The PSR listed James's total offense level as 27, *id.* ¶ 53, and his criminal

history category as VI, *id.* ¶ 64.  The Sentencing Guidelines range for imprisonment on counts

one and two was 130 to 162 months.  *Id.* ¶ 88.  The Guidelines range for count four was 120

months, the statutory maximum term of imprisonment.  *Id.*  Count three carried a statutory

minimum seven-year term of imprisonment that had to be imposed consecutively to any other

count.  *Id.* ¶¶ 87–88.  James did not object to the PSR.  *Id.* at 23.[1]  On December 8, 2017, United

States District Judge Colin Bruce, who was then presiding over the case, sentenced James to a

total term of 228 months of imprisonment: 144 months on counts one and two and 120 months

on count four, all to be served concurrently, and a consecutive 84 months on count three.

Judgment 1–3, ECF No. 56.

      The case was subsequently reassigned to this Court.  *See* Oct. 16, 2018 Text Only Order

Reassigning Case.  On the Government's motion, the Court reduced Defendant's sentence to 171

months: 87 months on counts one, two, and three to run concurrently; and 84 months on count

three to run consecutively to the remaining counts.  July 31, 2019 Min. Entry; Am. Judgment 1–

2, ECF No. 98.

      In the fall of 2020, James filed the Pro Se 2255 Motion, in which he argues that Judge

Bruce violated his due process rights by presiding over his case; that he received ineffective

assistance of counsel based on the Federal Public Defender's ("FPD") failure to preserve his

---

[1] He had objected to a prior version of the PSR, *see* Obj., ECF No. 51, but he had no objections after revisions were made.

rights with a tolling agreement; that he received ineffective assistance of counsel based on

Pollock's failure to file a motion to suppress; and that his robbery conviction is not a crime of

violence for purposes of his § 924(c) conviction. Pro Se 2255 Mot. 4–8.[2]  The due process claim

is based on *ex parte* communications between Judge Bruce and the United States Attorney's

Office for the Central District of Illinois ("USAO") that came to light in 2018. *See United States*

*v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery

and disclosure of the communications).

The Court appointed counsel to represent James with respect to the Pro Se 2255 Motion.

Oct. 26, 2020 Text Order. Counsel then filed the Counseled 2255 Motion which raises the

following claims: that Judge Bruce violated James's due process rights; that Judge Bruce

violated 28 U.S.C. § 455(a) by failing to recuse himself; and that the FPD provided ineffective

assistance of counsel by failing to include a claim based on Judge Bruce's communications in

James's appeal and by failing to secure tolling agreements. Counseled 2255 Mot. 12, 23–24.

The Government responds that James cannot show that Judge Bruce was actually biased

against him; that he procedurally defaulted his § 455(a) appearance of bias claim; that the

§ 455(a) and ineffective assistance of counsel claims are untimely; and that the § 455(a) and

ineffective assistance of counsel claims are meritless. Resp. 26–27, ECF No. 115.

No reply was filed, though Thomas later filed a motion for a status conference.

## DISCUSSION

### I.     Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set

aside, or correct it. 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy

---

[2] The Court uses the page numbers generated by CM/ECF because the Pro Se 2255 Motion is not consistently paginated.

because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

## II.     Analysis

### A.  Due Process

James's due process claim is based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, approximately nine months after James was sentenced. These communications have been detailed and summarized elsewhere. *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf). James argues that these communications demonstrate that Judge Bruce was actually biased against him, violating his due process rights. *See* Counseled 2255 Mot. 12–15.

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)). A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

4

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern his case.  It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted).  Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062.  It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted).  James relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no communications that concern his case specifically or any evidence showing that the communications impacted his case.  *See* Counseled 2255 Mot. 4–15.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing.  *Shannon*, 39 F.4th at 884–86.  In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence.  *Id.* at 886–87.  Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte*

5

communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). James points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him. Instead, he is relying on the *ex parte* communications alone. *See* Counseled 2255 Mot. 13–15. The Court thus finds that James has failed to show either actual bias or a risk of bias so high that it violates due process. The due process claim is denied.

### B.  Section 455(a)

James claims that Judge Bruce should have recused himself under 28 U.S.C. § 455(a), which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Government does not explicitly address whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he should have recused himself from James's case.[3] Instead, it argues that any § 455(a) violation is not a basis for relief under § 2255 in this case, Resp. 45, that James procedurally defaulted his § 455(a) appearance of bias claim, *id.* at 45–46, and that his appearance of bias claim is untimely, *id.* at 46–52. Regardless of whether the claim was untimely filed or procedurally defaulted, the Court denies it on the merits.

Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974). Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346. The

---

[3] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far. *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

"appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[4]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[5]  In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice."  *Id.* (quotation marks omitted).  It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255."  *Id.*  It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency."  *Id.*  And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap.  *Id.* at 82, 83.[6]

---

[4] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[5] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available."  *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

[6] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear.  The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]."  *Couch*, 896 F.2d at 80 (quotation marks omitted).  The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief.  *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255.").  It noted that by

7

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality."  It made this assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988).  *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a).  *Liljeberg*, 486 U.S. at 858, 863.  Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances."  *Id.* at 863–64 (quotation marks omitted).  The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

*Id.* at 864.  The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under section 2255."  *Hardy*, 878 F.2d at 97.  It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal."  *Id.*  The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255

---

resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so."  *Id.* at 82.  The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted). Here, the alleged error does not rise to that level. As noted above, James has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))). And any violation of § 455(a) would have no bearing on James's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that

nothing in the record indicated he was not guilty (quotation marks omitted)).  Moreover, Judge Bruce did not rule on any substantive pre-plea motions in James's case, and James was sentenced to a within-Guidelines sentence.

The Court does not find that *Liljeberg* requires a different result.  *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances.  *See Liljeberg*, 486 U.S. at 858.  And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885.  The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless.  It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard.  *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.").  "There is a difference between reversing an error on appeal and correcting the error years later."  *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

James has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice.  His § 455(a) claim, therefore, does not warrant relief under § 2255.

### C.  Ineffective Assistance of Counsel

James asserts that he received ineffective assistance of counsel in three ways: first, the FPD failed to include a claim based on Judge Bruce's *ex parte* communications in James's appeal "once the full scope of the *ex parte* communications was revealed," Counseled 2255 Mot. 23; second, the FPD failed to secure a tolling agreement for James to bring a § 455(a) claim via § 2255, *id.* at 23–24; and third, Pollock failed to file a motion to suppress statements he made to police, Pro Se 2255 Mot. 7.  The Government argues that James's ineffective assistance claims are untimely and meritless.  Resp. 46–64.

#### 1.  Appeal

This claim is clearly meritless.  James's time to appeal expired on December 28, 2017, *see* Fed. R. App. 4(b)(1)(A)(i) (providing that a defendant's notice of appeal must be filed within fourteen days of the entry of judgment), long before the *ex parte* communications came to light. The FPD cannot have performed deficiently by failing to make an argument on appeal based on facts of which it was not aware.

#### 2.  Tolling Agreements

This claim is also clearly meritless because James has no constitutional right to counsel for postconviction proceedings.  *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . .").  Any deficient performance with respect to securing a tolling agreement to bring a § 2255 motion does not create a Sixth Amendment violation.

### 3.   Failure to File Motion to Suppress

This claim is clearly untimely.  A federal prisoner seeking to vacate his sentence under

§ 2255 has one year to do so, from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  "[T]he timeliness of each claim asserted in . . . a section 2255 motion . . .

must be considered independently."  *Davis v. United States*, 817 F.3d 319, 328 (7th Cir. 2016)

(footnote omitted).

James asserts that his counsel should have filed a motion to suppress his statements to

police on the basis that he invoked his right to counsel.  Pro Se 2255 Mot. 7.  James does not

assert that the Government impeded his right to bring this claim and this claim does not rely on

any new rights or facts; instead, James asserts that he told his counsel he wanted her to file this

motion while his case was proceeding before the district court but she told him it would interfere

with his request for a sentence reduction and that he had no legal basis for a motion to suppress.

*Id.*  James contends that he later realized that she was wrong and that he does have legal grounds

to argue for suppression of his statements.  *Id.*  But there are no new facts or new rights

recognized by the Supreme Court supporting his claim.  *Cf. Davis*, 817 F.3d at 327 ("To the

extent Davis is complaining of errors made at his sentencing or his attorney's ineffectiveness

with respect to the plea agreement, those claims were known to Davis at the time his conviction became final . . . .").

This claim is accordingly governed by § 2255(f)(1). His conviction became final on December 28, 2017, when his time to appeal expired. *See id.* Thus, he needed to bring this claim by December 28, 2018. As his Pro Se 2255 Motion was not filed until 2020, the claim is untimely.[7]

### D. Crime of Violence

James's last claim is that Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c). Pro Se 2255 Mot. 8. But the Seventh Circuit has repeatedly rejected this argument. *United States v. McHaney*, 1 F.4th 489, 491 (7th Cir. 2021) ("[W]e have held time and again that Hobbs Act robbery qualifies as a crime of violence under the elements clause— (§924(c)(3)(A))—because it entails the use or threat of force."); *United States v. Worthen*, 60

---

[7] The time limits set forth in § 2255(f) are subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255). While James makes an equitable tolling argument, he argues only that he was misled regarding the statute of limitations for claims based on Judge Bruce's communications with the USAO. *See* Counseled 2255 Mot. 2–3. Even if this could support equitable tolling for other claims, James has failed to show he is entitled to equitable tolling. A defendant is entitled to equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotation marks omitted). James cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then merely states that Federal Public Defender Thomas Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse or a claim that Judge Bruce violated his due process rights. *See* Counseled 2255 Mot. 2–3. The Supreme Court in *Holland* found that that the attorney's conduct "may well" have warranted equitable tolling because the facts showed that it went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time despite the petitioner sending "many letters that repeatedly emphasized the importance of his doing so"; he did not research the applicable filing date; he did not inform the petitioner that the Florida Supreme Court had decided his case despite the petitioner's "many pleas for that information"; and the attorney "failed to communicate with his client over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters." *Holland*, 560 U.S. at 652. The Court recognized that "a garden variety claim of excusable neglect" would not warrant equitable tolling. *Id.* at 651–52 (quotation marks omitted). James points to no facts—and cites no further cases—to support his argument that Patton's legal mistake goes beyond mere negligence and supports a finding of extraordinary circumstances warranting equitable tolling. *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal advice generally does not by itself trigger equitable tolling."). Moreover, James merely states in a conclusory fashion that he "diligently filed his *pro se* filing upon learning of the mistake." Counseled 2255 Mot. 3. But "mere conclusory allegations of diligence are insufficient." *Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018).

13

F.4th 1066, 1069 (7th Cir. 2023) ("We . . . reiterate that the principal offense of Hobbs Act robbery qualifies as a crime of violence within the meaning of § 924(c)(3)(A)."). Therefore, this claim fails on the merits.

### III.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). James has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, Defendant-Petitioner Thomas James's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 108, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 113, are DENIED. His counseled motion for a status conference, ECF No. 126, is MOOT in light of this Order. The Clerk is directed to enter judgment and close the accompanying civil case, No. 2:20-cv-02290-SLD.

Entered this 18th day of March, 2024.

s/ Sara Darrow

SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

14